And so we will proceed with hearing the first case, Ayinola v. LaJaunie. I see Mr. Dvorkin on, and Ms. Shulman, are you on, just to be sure you're on? Yes, I'm here. There you are. Okay. Mr. Dvorkin. Good morning. May it please the court. We asked this court to reverse the $6 million discovery sanction as an unjust abuse of discretion. This was a civil death penalty for Mr. LaJaunie, and such ultimate sanctions are normally reserved for the most extreme cases, which this is not. I'm going to focus this morning on two factors, willfulness and the failure to properly consider lesser sanctions that are tethered to the alleged wrong and rest on our brief for the rest of the issues. Preliminarily, I'd just like to put this in context. Mr. LaJaunie had no motive to obstruct or delay here because he had just won partial summary judgment to narrow the case, and he was eager to vindicate his name and save his businesses. He was faced with a former attorney with irreconcilable conflicts who was blaming LaJaunie. And ultimately there was no harm from any discovery delay because everybody knew there was never going to be a September trial in this case because LaJaunie needed to find new counsel and prepare new counsel for that trial. As to willfulness, the facts do not support findings that LaJaunie willfully and in bad faith refused to obey the April 15th order, but rather show that he had always complied before this episode with all discovery, wasn't a hint of complaint about him before this. And he tried to comply in 2016, but new conditions beyond his control caused in part by the plaintiffs prevented faster compliance. He was not somebody thumbing his nose at the court. Mr. Borkin, what about the district court's conclusions that Mr. LaJaunie made misrepresentations about the extent of his document production? Well, your honor, I'm glad you asked that because that's one of the three flaws or two of the three flaws in the willfulness findings that he absolutely did not make such a misrepresentation on June 28th and let me explain why. There's two reasons. The court concluded that he had acted in bad faith because one, it bound him to his attorney's June 18th statement to the court that LaJaunie had completed a misrepresentation because LaJaunie a week later produced 12 more boxes. This was clear error for two reasons. One, there's no absolute rule that a client is bound by everything his attorney has done. There are many cases where the court takes a finer look at that, depends on the authority of the attorney. The court didn't do that here. It refused to do that. It really hid behind that absolutist rule. But more importantly, it's not factually true. We focused the court's attention in our reply brief at pages 12 and 13 on the key emails filed under seal, but now before the court, that the court had because they were submitted to it on July 1st, but it completely ignored them. There was a conversation in email between the attorney withdrawing from the case and Mr. LaJaunie and I submit, if you give a fair reading to those emails, so I'll go through very quickly, but it's absolutely clear that that's not a true statement. So the attorney says, are you producing more today? Remember June 28th is the court's deadline. The attorney feels compelled that he can only give one answer to the court. You've either complied or you haven't complied. The attorney says, are you producing more today? LaJaunie says more will be forthcoming and I'll leave a note with the delivery today to that effect, unless you tell me otherwise. The attorney, you can't represent, I cannot represent that you've complied if that's the case. The only representations he's prepared to make is that he has complied. LaJaunie says all the documents we could find as of today, I am producing. He's very clear about that. The attorney again says, I don't have the option, but then, then they find 12 more boxes. Yes, but he's saying to the attorney, your honor, that I'm only producing today what I can find. He's not representing that he's found everything there is, or he's producing everything there is. It's clear that he's telling that to the attorney. And then the attorney says, I don't have the option to say that. I can only say I'm complying in totality. And LaJaunie responds by saying, again, I've only complied as of today. If you're playing some kind of game with me to get us in trouble, cut it off immediately. I hope this is unacceptable and this weird outburst is not part of some maneuver on your part. It's the attorney is trying to exculpate himself. The attorney is trying to get out of the record. Is the record clear about what exactly what discovery was missing as of August, 2016? In other words, there's the 10 boxes, there's the 22 boxes, and there's these representations from plaintiff's counsel that a lot of it is non-responsive. But is what exactly was missing as of August, 2016? Is the record clear about that? I'm glad you mentioned that, Your Honor, because not only is the record unclear about it. Again, remember, LaJaunie is sitting there pro se, he's got nobody advocating for him. He doesn't know what the rules are. He doesn't know anything about the legal standards. The attorney is trying to get out of the problem he's confronted. So he's not sanctioned. And the court doesn't even have a hearing to find what documents exist. I mean, I'll concede that there was an effort underway to get from ADP, electronic records that might fill in the gaps. But other than that, there's the plaintiff's version and there's the defendant's version, but there was no evidentiary hearing to find out what the facts were. And again, I emphasize, which goes to the lesser sanctions, there was never going to be a trial in September. It wasn't going to be a trial until 2017. LaJaunie had no attorney. The judge was going to let these people withdraw. He just held up technically to keep them in the case for the appearance that he had an attorney during this whole episode, but the judge did let them withdraw on August 2nd in the case. He would have had to find an attorney and go to trial sometimes in 2000. Wasn't part of the reason he didn't have an attorney that he wasn't cooperating with discovery? No, not at all. There's not a single, they moved to withdraw on May 31st. They moved to withdraw because they were owed more than a hundred thousand dollars. These were not attorneys who were selected by Mr. Turner, Mr. Appointed by insurance on the policy ran out. It didn't want to be in the case. And the judge found there was reconcilable conflicts and they were not paid. I just want to also say that the third flaw is this, is this idea that he had some motive to delay discovery. This is something that judge just invented out of thin air. There's absolutely no evidence for it. And it makes zero sense. He had just one summary judgment. He needed to vindicate his name. The judge found that he was delaying so that we can wait till the businesses went out and were insolvent or judgment proof. How is that? That is, it makes no sense that that's a legit margin of interest or would have benefited him. Well, he was still on the hook on the, on the FLSA claims, right? He would be on the hook. If the businesses were judgment proof, it would just work against him. I want to make sure I leave time, your honor, for the sanctions issue, because the key thing about the sanctions issue is these documents were only about damages. The plaintiffs are completely flip flop on appeal. They, there was no discovery had been closed in 2015. They can't, the judge after summary judgment was partially granted, they came back for more discovery. It's all in our brief, but they asked for discovery solely on damages for class damages. The judge granted discovery solely on class damages. The judge says that the judge also says we're going to, aren't we going to have a trial on liability here first? Doesn't that make most sense and leave damages for the, for the, uh, for the bench because it's so impossible for a jury to decide damages. So I submit to you that if there was going to be sanctions, it should only have been on damages. And these documents had nothing to do with Marjane's personal liability. The only issue for his personal liability was, was he an employer or wasn't he an employer? And the case was very thin on that. The documents have nothing to do with that. And the judge not only didn't, and that was told to the judge on July 1st in the letter to him that it was just damages and yet he gave no consideration to that in part, because Marjane had no attorney advocating for him at the point. And he didn't know what the legal standards were to advocate for. So, uh, and then when he, if it was going to impose a sanction, he should have considered lesser things like, like, uh, shifting the burden or restricting the proof or things like that, instead of this fatal ultimate decision, which just is a death penalty for Mr. Lajanais. Um, thank you. Uh, we, we, uh, Judge Akin is back. Um, we've now lost Judge Jacobs. Yes. I don't see him, Judge, but he's here. I see his name on the screen. Judge, can you hear me? I can hear you. Um, Judge Jacobs. Yeah. He's here now, Judge. I'm letting him in. Judge Jacobs, we can see you now. You're back. I am, I am back. I received some expert technical assistance here, but I have now, I have now joined, I, I didn't, um, where, where are we in this? Uh, we, we had reached the red light, uh, for Mr. Dvorkin, but if you had a question or if it's okay. I, I did on the default judgment issue. Um, there, there was no evidentiary hearing, but can you crisply state what is the disputed question of fact that would warrant the evidentiary hearing? Well, there's two, Your Honor. One, the judge clearly relied on motive and bad faith in both as to the false statement and to this theory that he was intentionally delaying and took no findings on that. And when you have bad faith, it requires a high degree of specificity with respect to findings of fact of which there are none. And secondly, he had put in, Mr. Legendary had put into the record. The fact that while he was trying to comply, he was constrained by the fact that the plaintiffs had virtually caused the restaurant he had closed and hundreds of boxes were, which were scattered there that had all these documents were moved all over town. He had no staff except for one person who had no knowledge about the records. Mr. Legendary was not a full-time. He was done, wasn't an employee. They weren't his records. And there should, with that in the record, the judge should have had an evidentiary hearing with an attorney representing Legendary to ferret out whether he was constrained by circumstances beyond his control. But he didn't have a lawyer at that time. No, he didn't have a lawyer at that time. And I can't emphasize enough, your honor, that if there was going to, if there was, if he's going to find a lawyer and schedule a trial, and if the judge is going to have a liability trial, which he said he was going to have first, there wouldn't have been a damage trial for months and months and months. And during that time, if there were any existing records, they surely would have been produced. It was zero prejudice to the plaintiffs in this case. Thank you. Thank you. All right. Well, Mr. DeVar, can you have some rebuttal time? So we'll hear from Ms. Schulman and then we'll come back to you. It pleased the court. The district court did not abuse its discretion in entering a default against defendants who brazenly flouted its discovery orders and repeatedly made false statements to the court. These actions demonstrated not only defendants willfulness and the inefficacy of lesser sanctions, but they highlight the need for the availability of harsh sanctions to deter similar misconduct in other litigants. The district court placed a lot of weight on Lajeunie's false statements that the discovery orders had been fully complied with, including Lajeunie's personal statement in his July 20th letter that everything was produced by July 8th, a point that Lajeunie reiterated at the August 2nd hearing. Do you have a page number for that July 20th letter in the appendix? Um, I believe it's, uh, special append, uh, sealed appendix 127. It's, uh, the, the last sentence of the second paragraph on that page. In the end, all documents were produced within the final timeline ending July 8th, 2016. And this was actually just one of several false statements that Lajeunie made in that letter regarding the discovery. On the page before he says that the first 10 boxes that were produced to us, um, had never been accounted for by, by lawyers on either side. That's not true. We sent a letter detailing what was and was not in those boxes. Um, he talks about the class list that defendants produced. He says, I don't know how my attorneys got this document, how they produced it, I've never seen it. His own employee, Yoko Iizuka, emailed the class list to counsel and copied Mr. Lajeunie on that email. Um, another false statement that he made in that letter, not related to this particular discovery dispute, but when he's complaining about class certification, he says that certain recordings were sent to KDV, but were never produced, they were produced, and they were referenced in motion practice. So Lajeunie had an extensive history of making false statements to the court on his own behalf, relating to this discovery dispute. Um, and that's, that's why the court was correct in finding that he acted willfully and in bad faith. And given that he was not being truthful about the production and what was being done to comply, um, there simply was no reason to believe that lesser sanctions would suffice to compel compliance, particularly since the previous lesser sanction of the $7,000 fine did not induce full compliance. Ms. Shulman, um, was class notice ever sent out? It was originally due June 16th of 2016. Was it sent? We sent the class notice on July 1st. Yes. How many opt-outs? I believe it was two. What was the total size of the class? I don't know off the top of my head. I think it was something around 500. So about 500 people. And under the New York labor law, they go back six years on the statute of limitations. That's correct. As of the April 15th discovery order, which related to rule 23 class discovery, as of that, as of the missed deadlines in June and July, Mr. Lajeunie was not a party to any of the class claims. Isn't that right? At that point. Correct. Cause that's before the reconsideration. So he had been on the hook for a two, an FLSA claim two to three years. And just the opt-ins a few dozen people, but suddenly at the moment, the sanction is imposed. He's on the hook for hundreds of employees going back six years. Is that right? That's correct. I believe with the number of opt-ins was about 74. Okay. So why is it, why is it fair? I mean, the Supreme court has said that the sanction must be related to the particular claim that was at issue. Why is it fair to impose the sanction on him when at the time that he was allegedly dragging his feet, uh, he was, he was not a party to those class claims and it was class discovery that was happening. That's all it was. Well, it was, it was class and collective discovery. So there was outstanding discovery on the collective, uh, plaintiffs. That's part of the issue here. The documents relating to, uh, the tip pool and the mater DS, those relate directly to the FLSA claim. The FLSA claim in this case was that, um, the defendants were not entitled to pay employees pursuant to the tip credit because the mater DS were improperly included in the tip pool. So the discovery related to all of those claims. Um, Mr. Lajeunie was also the actual wrongdoer in this case. He was the one who was in charge of collecting discovery for, for defendants, made the actual representations to the court that led to the, to the default. Um, and of course, as we set forth in our, um, cross appeal, we believe the initial grant of summary judgment was incorrect under, um, Nick's garage. The period, I want to focus for a second on the, the, the statements that the district court made, um, about certain relevant facts. He said that the discovery schedule was in place years ago. And that's false, right? That was the discovery deadline for, for this category of discovery was put in place on April 15th, right? That's correct. And then he said, non-compliance has persisted since at least the April 15th order, right? But that's false because the first deadline was June 1st. That's the class list, which was provided three weeks later. And then the next deadline was June 16th. So the, as of August 10th, there was less than two months delay, right? That's correct. But, uh, it was guaranteed to be at a minimum, another two months delay because on August 2nd, Lajani's position was it will take two months to prepare a list of Mater Ds and their dates of employment, um, which is highly suspect given that they were able to prepare the class list, which contains many more people, um, in a much shorter period of time, there was never any reason given for why the Mater D list had not yet been prepared and why it would take two months to, to pull that together. So the Mater D list was not in the class list that was provided, um, on June 24th? Correct. The class list was just the class members, servers, bartenders, busters, those positions, not the Mater Ds. The Mater D list was never produced. Do you have any case where the, uh, the second circuit has allowed the most severe sanction of default judgment where the period of non-compliance was less than three months? Um, I, there is one case, I don't actually believe it's cited in the papers, M. Buscato versus DC Comics, 347 Fed Appendix 700 from 2009. Um, that was three months of non-compliance. If I could point out- What was the reason given to the court for the withdrawal of counsel? The, the court permitted, uh, defense counsel to withdraw because of Lajanis' July 20th letter. That's where he accused his counsel of gross misconduct in all aspects of the   class certifications, lack of settlement, um, as well as discovery issues. Until that point, um, Judge Sullivan was not allowing defense counsel to withdraw because of the delay- When, when you say, when you say discovery issues, specifically, what? Um, he said that, he said that his attorneys had failed to account for the documents that had been produced. He complained about the class list and that KDV pulled it out of nowhere and never let him see it. Um- What, what reason was given to the court, if any, by counsel, by the lawyers themselves, for why they were withdrawing? Well, the original request was made because of the outstanding fees. I believe it was over $100,000. And then after, if I'm getting the timing correctly, it was when they submitted this July 20th letter that they, uh, renewed their application. Yes, that's correct. It's in the sealed appendix 122. Unfortunately, as this letter from Lajanis clearly demonstrates, our relationship with defendants has broken down completely and beyond the point where we can continue to represent them effectively. And, um, you know, in the letter, Lajanis just makes numerous, um, allegations of unethical conduct by his attorneys. Well, they had not been paid $100,000 and they were, they weren't doing much work at that point, were they? Um, I mean, I, I, I don't know exactly what they were doing. There certainly are emails going back and forth that are in the sealed appendix, um, with the attorneys trying to get, uh, Lajanis to produce discovery. Um, I know- When a court orders a whole bunch of documents for class discovery produced in a week and they just email the client and tell them to get it together and produce it directly rather than sending six associates out to oversee it and get the documents and organize them. Is there anything in the record that said Mr. Lajanis was preventing the lawyers from doing that? No, I don't believe so. Um, well, I guess I'm out of time unless there's any further questions. Nope. All right. Thank you. Thank you. We'll go to the rebuttal. Um, what was just said is not accurate. At page 29 of the special appendix, the bottom of 13, the court gives its reasons for with permitting withdrawal. After keeping the illusion that Mr. Lajanis actually had counsel for the two months while this episode was going on. It says in light of the attorney's representation that defendants owe them more than a hundred thousand dollars for work undertaken. Defendants attorneys have demonstrated satisfactory reason to withdraw. The next page, it goes into the reconcilable conflicts between the attorneys that relationship is broken down. It wasn't broken down because Mr. Lajanis was making allegedly false statements. It was broken down because he was upset with the conduct of his attorneys and their failure to help them. And they weren't doing a single thing during this period of time to help them find records. And they weren't doing a single thing to advocate for him as to what the standards for lesser sanctions are. He had no clue what the standards for lesser sanctions are, let alone to argue that all that was all was damages. And as I said, again, and the Supreme Court has held an insurance corporation of Ireland and cited in our case, the sanction has to be addressed to the debt, to the harm done. The harm done here was purely damages. Nobody's disputed that on appeal. The plaintiffs haven't disputed that they flip-flopped on appeal that could have been solved very simply, maybe never at all, because he would have had four months to find any missing documents by the time any trial would have happened. The judge just got angry at Lajanis because he was frustrated. There wasn't going to be a trial. And at the end of the day, when you look at his opinion, at the end of the opinion, he, he, he reverses things. It's almost like Alice in Wonderland. He says, because we can't have a trial in September, I'm going to default you. That makes absolutely no sense. It's the other way around. It should be, should I default you? And then I'll figure out whether there's going to be a trial and when, where. So for all of those reasons, what happened here is totally unfair and the court should reverse outright the sanctions with instructions, if it's going to be, they're going to be any hearing at all. And it should reassign the case. All right. Thank you. Thank you both. The court will reserve decision.